# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GAMALIEL LOPEZ-AYOLA,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS THE SEARCH AND SEIZURE OF THE VOLKSWAGEN JETTA**<br><br>Case No. 2:12-cr-00107-RJS<br><br>Judge Robert J. Shelby |

On November 15, 2011, police officers executed a search warrant on Defendant Gamaliel Lopez-Ayola's residence located in an apartment complex. While executing that warrant, officers searched a Volkswagen Jetta parked in Mr. Lopez-Ayola's complex. Mr. Lopez-Ayola moves to suppress the evidence obtained from the search of that Jetta, arguing primarily that the Jetta was not "presently at" Mr. Lopez-Ayola's apartment and thus fell outside the scope of the search warrant.

For the reasons stated below, the court concludes that the officers could, with reasonable effort, ascertain that the Jetta was "presently at" Mr. Lopez-Ayola's apartment, and thus within the scope of the search warrant. Independent of whether the Jetta was within the scope of the search warrant, the court finds that the officers had probable cause to justify the warrantless search of the Jetta. For these reasons, the court DENIES Mr. Lopez-Ayola's motion to suppress. (Dkt. 316.)

## RELEVANT BACKGROUND

On November 13, 2011, Detective Kyle Shelley of the Utah County Major Crimes Task Force applied for and obtained a search warrant in connection with an ongoing drug trafficking investigation. (Search Warrant, Dkt. 316-1.) The warrant permitted police officers to search the following:

1. Mr. Lopez-Ayola's apartment, located at "2935 South Upland Lake Drive Apartment #2-208, West Valley City, Utah";

2. Mr. Lopez-Ayola and Francia Karen Aranda;

3. "persons presently at, or arriving to the apartment of 2935 South Upland Lake Drive (2385 West) Apartment #2-208, West Valley City, Utah";

4. a "black Pontiac G6 with Utah plate number B942ZW"; and

5. "vehicles presently at, or arriving to the apartment of 2935 South Upland Lake Drive (2385 West) Apartment #2-208, West Valley City, Utah."

On November 15, 2011, officers executed the warrant and searched Mr. Lopez-Ayola's apartment. (Hearing Tr. at 43, Dkt. 324.) Ms. Aranda and Mr. Lopez-Ayola, who have a child together and appear to live together, were in the apartment at the time of the search. (*Id.* at 96, 106.) During the search, officers found contraband including "a little small twist of cocaine[.]" (*Id.* at 108.) The officers arrested Mr. Lopez-Ayola and Ms. Aranda.

In the apartment, the officers also discovered keys and an expired registration for a Volkswagen Jetta formerly registered to Alfredo Leal. (*Id.* at 106.) The police later learned that the Jetta was currently registered to Ms. Aranda at an address officers believed Mr. Lopez-Ayola used to store drugs. (*Id.* at 98, 105.)

For several weeks prior to the search, officers had surveilled Mr. Lopez-Ayola. While conducting that surveillance, officers observed both Ms. Aranda and Mr. Lopez-Ayola driving the Jetta. (*Id.* at 95.) Based on the surveillance, officers believed that the Jetta had been used to facilitate drug trafficking transactions. (*Id.* at 95, 127.) For example, on November 4, 2011, officers believed that Mr. Lopez-Ayola sent Ms. Aranda in the Jetta to wire money derived from drug transactions. (*Id.* at 129.) On November 7, 2011, officers followed Ms. Aranda in the Jetta, and they observed her enter financial institutions to wire money based on instructions from Mr. Lopez-Ayola. (*Id.* at 130-131.) On November 12, 2011, Ms. Aranda used the Jetta to attend a meeting with other people that officers believed were involved in a drug trafficking conspiracy. (*Id.* at 130.)

When officers executed the search warrant on November 15, 2011, the Jetta was parked immediately next to a Pontiac G6, which was specifically identified in the warrant. Based on these circumstances, the officers also searched the Jetta. (*Id.* at 103.) Officers used the Jetta keys discovered in Mr. Lopez-Ayola's apartment to enter the vehicle, where the officers found approximately 13 grams of heroin. (*Id.* at 16, 106.)

Officers later interrogated Mr. Lopez-Ayola, who admitted that he purchased the Jetta for Ms. Aranda. (Interview Tr. at 8, Dkt. 339-1.)

**ANALYSIS**

**I.     Standing**

As a preliminary matter, the United States argues that Mr. Lopez-Ayola lacks standing to challenge the search of the Jetta because he is not its registered owner. The Tenth Circuit has held that to establish standing to challenge a car search, Mr. Lopez-Ayola "bears the burden of showing that he had a 'legitimate possessory interest in or [a] lawful control over the car.'"

*United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003) (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)). But Mr. Lopez-Ayola "is not required to produce legal documentation showing a chain of lawful custody from the registered owner to himself. . . . Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." *United States v. Rubio-Rivera*, 917 F.2d 1271, 1275 (10th Cir. 1990) (internal quotation marks and citations omitted).

Here, Mr. Lopez-Ayola presents facts establishing a reasonable expectation of privacy. Mr. Lopez-Ayola and Ms. Aranda shared a common residence, a child, and access to the Jetta, which Mr. Lopez-Ayola purchased for Ms. Aranda's use. Although Ms. Aranda was the primary driver and registered owner, officers observed Mr. Lopez-Ayola driving the vehicle in the weeks prior to the search. Thus, the court concludes that Mr. Lopez-Ayola has a legitimate possessory interest and a reasonable expectation of privacy in the Jetta. *See, e.g., United States v. Posey*, 663 F.2d 37, 41 (7th Cir. 1981) (finding defendant had an expectation of privacy in an automobile owned by his wife where defendant had permission to use the vehicle).

Accordingly, Mr. Lopez-Ayola has standing to challenge the search of the Jetta.

## II.     Search Warrant

Mr. Lopez-Ayola does not challenge the sufficiency of the search warrant itself. Rather, he contends that the search of the Jetta was improper because the warrant did not adequately—and with sufficient particularity—describe the Jetta as a place to be searched by officers. While the warrant obtained by officers authorized searches of "vehicles presently at or arriving to" Mr. Lopez-Ayola's apartment, Mr. Lopez-Ayola contends that the Jetta was not "presently at" his apartment because of the Jetta's physical distance away from the apartment, and because the

Jetta was not parked in the space specifically reserved for his apartment. Consequently, Mr. Lopez-Ayola contends the warrant did not authorize agents to search the Jetta, and the fruits of that search must be suppressed.

The Supreme Court has held that when determining whether a place to be searched is adequately described in a warrant so as to fall within the scope of a warrant, "[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). In making this determination, the court is required to take into account "the executing officers' knowledge of the place to be searched[.]" *United States v. Hutchings*, 127 F.3d 1255, 1259 (10th Cir. 1997). In the Tenth Circuit, "practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched." *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) (internal quotation marks and citation omitted).

Here, Mr. Lopez-Ayola's argument ignores the close relationship of the Jetta with the other subjects of the search warrant. The warrant clearly specified that Mr. Lopez-Ayola and Ms. Aranda were the subjects of the search. When the warrant was executed, Ms. Aranda and Mr. Lopez-Ayola were arrested in the apartment. The Jetta's outdated registration and keys were found in Mr. Lopez-Ayola's apartment. In addition, officers had previously observed both Ms. Aranda and Mr. Lopez-Ayola driving the Jetta. Also, the Jetta was parked immediately next to the G6—the car specifically identified in the warrant. Given the officer's subjective understanding of these circumstances, the court concludes that the officers could, with reasonable effort, ascertain that the Jetta was "presently at" Mr. Lopez-Ayola's apartment, and therefore within the scope of the search warrant.

Mr. Lopez-Ayola attempts to overcome this result by arguing that if the officers knew of the connection between Ms. Aranda, Mr. Lopez-Ayola, and the Jetta prior to obtaining the search warrant, they should have specifically included the Jetta in their warrant application. Indeed, if the officers believed at the time they prepared the warrant application that the Jetta would be "presently at" Mr. Lopez-Ayola's apartment on November 15, 2011, a better practice might have been to include the Jetta in the application. But Mr. Lopez-Ayola does not attack the validity or sufficiency of the warrant, and does not otherwise clearly explain why this is relevant to the inquiry of whether officers could, with reasonable effort, ascertain and identity that the Jetta was "presently at" the apartment, and thus within the scope of the search warrant.[1]

Accordingly, the court finds that the Jetta was within the scope of the search warrant, and denies Mr. Lopez-Ayola's motion to suppress.

## III. Probable cause

But even if the Jetta had not fallen within the scope of the search warrant, the Supreme Court has found that, under the automobile exception, "where there [is] probable cause to search a vehicle[,] 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained.*'" *Maryland v. Dyson*, 527 U.S. 465, 466–67 (emphasis in original) (quoting *United States v. Ross*, 456 U.S. 798, 809 (1982)). "Probable cause to search a vehicle is established if, under the *totality of the circumstances*, there is a fair probability that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir. 1993) (emphasis in original) (internal quotation marks and citation omitted). Thus, independent of the court's conclusion that the Jetta fell within the scope of the

---

[1] During the April 3, 2014 Hearing, Mr. Lopez-Ayola suggested for the first time that the officers deliberately failed to include the Jetta in the search warrant application. As discussed above, the court need not reach the allegation because the court finds that the Jetta fell within the scope of the warrant and, in any event, the search was supported by probable cause.

search warrant, a warrantless search of the Jetta was nevertheless reasonable if supported by probable cause at the time of the search.

Mr. Lopez-Ayola argues that officers lacked probable cause to search the Jetta because officers surveilled the Jetta on November 12, 2011—three days before the search of the Jetta. At that time, officers had no indication that the Jetta contained money or illicit drugs. Indeed, Mr. Lopez-Ayola points to the fact that the officers following the Jetta between November 4, 2011 and November 12, 2011 never initiated a stop even though they suspected ongoing criminal activity. Under this line of reasoning, if the officers did not believe that the Jetta contained contraband between November 4, 2011 and November 12, 2011, then certainly no probable cause existed three days later.

But the relevant inquiry here is whether officers had probable cause to search the Jetta at the time of the execution of the search warrant on November 15, 2011. It is irrelevant whether officers had probable cause to search the Jetta on November 12, 2011. Nor is it relevant whether officers chose to surveil the Jetta between November 12, 2011 and November 15, 2011. As stated above, officers had observed both Ms. Aranda and Mr. Lopez-Ayola driving the Jetta. Based on their surveillance, officers suspected that the Jetta was used in connection with illegal drug activity prior to the execution of the search. In addition, while executing the search warrant, officers found contraband in Mr. Lopez-Ayola's apartment. Officers also found an outdated vehicle registration and the keys to the Jetta—a vehicle officers already suspected of carrying contraband. Under the totality of these circumstances, the court concludes there was a fair probability that the Jetta contained contraband or evidence at the time of the search on November 15, 2011, and that the search of the Jetta was therefore proper.

Mr. Lopez-Ayola responds by arguing that no exigent circumstances justified the warrantless search of the Jetta. It is true that the officers could have stayed with the Jetta until a search warrant was obtained. But the Supreme Court has made clear that there is no separate exigency requirement under the automobile exception. *Dyson*, 527 U.S. at 466–67 (citing *Ross*, 456 U.S. at 809). "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting . . . from the pervasive regulation of vehicles capable of traveling in the public highways" justifies the application of the automobile exception. *California v. Carney*, 471 U.S. 386, 392–93 (1985). If "probable cause exists to believe [the vehicle] contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Id.* (internal quotation marks and citation omitted). Thus, the correct inquiry is not whether there were exigent circumstances sufficient to justify the search of the Jetta. Nor is it relevant whether it would have been a better practice for the officers to obtain a separate search warrant for the Jetta. Rather, as stated above, the narrow question is whether the officers had probable cause to search the Jetta.

Because the court concludes that officers had probable cause to search the Jetta following the search of the apartment and the discovery of the Jetta at the complex, the court also concludes that the search was reasonable under the automobile exception.

## IV. Inevitable Discovery Doctrine

The United States argues that Mr. Lopez-Ayola's motion should also be denied under the inevitable discovery doctrine. Having concluded that the warrant permitted officers to search the Jetta, and that there was probable cause to justify the warrantless search of the Jetta, the court need not reach this issue.

**CONCLUSION**

For the reasons stated, the court DENIES Mr. Lopez-Ayola's motion to suppress evidence seized from the Jetta. (Dkt. 316.)

SO ORDERED this 27th day of May, 2014.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge