IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GAMALIEL LOPEZ-AYOLA,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE DURING CUSTODIAL INTERROGATION**<br><br>Case No. 2:12-cr-00107-RJS<br><br>Judge Robert J. Shelby |

On November 15, 2011, police officers interrogated Defendant Gamaliel Lopez-Ayola at the Orem City Police Station. Mr. Lopez-Ayola moves to suppress statements made during that interrogation, arguing that the statements came after officers were required to stop questioning him because he invoked his right to counsel.

For the reasons stated below, the court concludes that Mr. Lopez-Ayola did not clearly and unambiguously invoke his right to counsel in a manner that required the officers to stop questioning him. Accordingly, the court DENIES Mr. Lopez-Ayola's motion to suppress. (Dkt. 315.)

### RELEVANT BACKGROUND

Mr. Lopez-Ayola was arrested on November 15, 2011. Police officers then transported him to the Orem City Police Station for an interrogation that was video and audio recorded.

### I.    Interview with Sergeant Orlando Ruiz

The interrogation began with Sergeant Ruiz asking Mr. Lopez-Ayola if "[y]ou feel good talking English?" (Interview Tr. at 1, Dkt. 339-1.) Mr. Lopez-Ayola replies "[n]o. Spanish."

(*Id.*) Shortly thereafter, Mr. Lopez-Ayola states something unintelligible in Spanish ending with the statement "can I have a lawyer?" (*Id.* at 3; *see also* Hearing Tr. at 75, Dkt. 324 (Interpreter Noelia Erickson testified that "[w]hat I hear Mr. Lopez say is, can I wait for an attorney?").) It is clear that Sergeant Ruiz does not understand Mr. Lopez-Ayola's statement. Sergeant Ruiz replies "[h]old on just a minute. Hold on. I don't—I don't speak Spanish." (Interview Tr. at 3.)

Officer Javier Chavez was standing just outside the interview room during the exchange. He testified that he did not hear the full context of the conversation. Instead, he testified that "I paused for a second, and I thought to myself I think he [Mr. Lopez-Ayola] asked for a lawyer. So I turned around and asked him. I wanted to make sure that if he did ask for a lawyer, that was going to be provided for him." (Hearing Tr. at 31.) Officer Chavez responds to Mr. Lopez-Ayola "[d]o you want an attorney? Are you ignoring me? Toro! I'm speaking to you." (Interview Tr. at 2.) Mr. Lopez-Ayola does not answer Officer Chavez's questions. A short time later, Mr. Lopez-Ayola informs the officers that he is deaf in his right ear. (*Id.* at 3.)

## II. Interview with Officer Leany

Because Sergeant Ruiz does not speak Spanish, Officer Leany enters the room to serve as an interpreter for Sergeant Ruiz. Sergeant Ruiz says to Officer Leany, "[d]o you want to show him [Mr. Lopez-Ayola] this [written waiver] and make sure he understands? He's read it. Just make sure he understands it. Go through that. If he wants to talk to us, then, sign this." (Interview Tr. at 3.) Officer Leany in turn asks Mr. Lopez-Ayola in Spanish "[d]o you understand it [the written waiver] or not?" (*Id.*) Mr. Lopez-Ayola says "[t]hat? Yes. If I want to remain silent, can I remain silent?" (*Id.*) Officer Leany replies to Mr. Lopez-Ayola in Spanish "[y]es, you can remain silent." (*Id.*)

There is dispute between the parties over what Mr. Lopez-Ayola said to Officer Leany after this. Ms. Ericson, an interpreter who reviewed the audio recording of the interrogation at the request of Mr. Lopez-Ayola, testified that "[a]fter that there is another statement in which I was only able to understand the word attorney." (Hearing Tr. at 75.) But Officer Leany testified that "[t]o my recollection in going through it [the interrogation], never once did he [Mr. Lopez-Ayola] ask for any attorney." (*Id.* at 62.) Felipe Jimenez, an FBI interpreter, testified that "I think for that portion [where Ms. Ericson heard the word attorney,] I have an unintelligible." (*Id.* at 82-83.) Specifically, Mr. Jimenez did not hear the word attorney, even when using state of the art headphones and equalizers. (*Id.*)

### III. Waiver

Shortly thereafter, Mr. Lopez-Ayola appears to engage Officer Leany and Sergeant Ruiz asking them "[d]on't you have questions?" (Interview Tr. at 4.) Officer Leany explains to Mr. Lopez-Ayola "[y]es, we have questions, but if—if you don't want to answer questions, then—we're done. That is only to explain your rights. Understanding the rights you have, if you decided to remain silent, fine. If you decide to answer some questions, fine. If you want to not answer others, well, that's fine, too." (*Id.*)

After another exchange between the officers and Mr. Lopez-Ayola, Sergeant Ruiz asks Officer Leany "[w]ould you read it [the waiver] out loud for him [Mr. Lopez-Ayola] again, just to make sure he's good? Just so he understands, and—he can stop whenever he wants." (*Id.*) Officer Leany then explains to Mr. Lopez-Ayola "[y]eah, I'm going to read it [the waiver] to you in Spanish. Before we ask you any question, you need to know your rights. Okay? You have the right to remain silent. Anything you say may be used against you in a court of law or-or any other proceeding. Do you understand it so far? You have the right to consult an attorney before

you make any statement or answer any question. You have the right to have an attorney present while we have this inter—interrogation. If you cannot afford—if you cannot afford an attorney, one will be provided for you before we ask you any questions." (*Id.* at 5.) Mr. Lopez-Ayola indicates that he understands. (*Id.*)

Officer Leany then explains the right to counsel to Mr. Lopez-Ayola in his own words, saying "[i]n simpler words, if you want an attorney, we can—then if we don't have one, we don't ask you questions. If you want to talk without an attorney present, we can talk." (*Id.*) Ms. Ericson testified that she believes the correct interpretation of what Officer Leany told Mr. Lopez-Ayola is "[i]f we don't have an attorney, we don't have to—we don't ask you any questions." (Hearing Tr. at 77.) Ms. Ericson testified that she believes in the context of the discussion, a native Spanish speaker would have understood the phrase to mean "we, the police, if we don't have an attorney for you, we don't ask you questions." (*Id.* at 78.) Mr. Lopez-Ayola indicates that he understands. (Interview Tr. at 5.)

## ANALYSIS

The Supreme Court has observed that "incommunicado interrogation in an unfamiliar, police dominated atmosphere involves psychological pressures which work to undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely." *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010). So, "to counteract the coercive pressure, *Miranda* announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney." *Id.*

As further protection from this coercive pressure, if "a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452,

458 (1994). In addition, failure to honor Mr. Lopez-Ayola's request for counsel requires "suppression of his subsequent statements[.]" *Mitchell v. Gibson*, 262 F.3d 1036, 1056 (10th Cir. 2001). But "the suspect must unambiguously request counsel . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 458. So, if "the statement fails to meet the requisite level of clarity" officers are not required to stop questioning the suspect. *Id.* "To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry" that "a reasonable officer in light of the circumstances would have understood." *Id.* at 459.

The dispute here is only whether Mr. Lopez-Ayola clearly and unambiguously invoked his right to counsel.

I. **Interview with Sergeant Ruiz**

Mr. Lopez-Ayola first argues that he clearly asked Sergeant Ruiz at the outset of the interrogation, "[c]an I have a lawyer?" (Interview Tr. at 2.) Mr. Lopez-Ayola contends that, while Sergeant Ruiz (a non-Spanish speaker) did not understand this invocation, Officer Chavez, a Spanish speaker who was just outside the interrogation room, must have heard this request. In contrast, Officer Chavez testified that he did not hear the full context of the conversation between Sergeant Ruiz and Mr. Lopez-Ayola. But he thought that he might have heard Mr. Lopez-Ayola ask for a lawyer from outside of the interrogation room. So, he came into the room and asked Mr. Lopez-Ayola directly whether he had asked for a lawyer. But Mr. Lopez-Ayola did not answer Officer Chavez's question.

In evaluating the credibility of Officer Chavez's testimony, the court has the benefit of the audio and video recording. After carefully examining the recording, the court concludes that it

5

has no reason to doubt the truthfulness of Officer Chavez's testimony that he did not hear Mr. Lopez-Ayola ask for an attorney in Spanish from outside the interrogation room. Importantly, the actions of Officer Chavez during the interrogation were consistent with his testimony. Officer Chavez thought he might have heard the word "lawyer." He then immediately entered the room and asked Mr. Lopez-Ayola to clarify, but Mr. Lopez-Ayola did not do so. Officer Chavez even became impatient when Mr. Lopez-Ayola failed to answer the question. In view of these events, and after carefully examining the recording, the court finds that Mr. Lopez-Ayola did not clearly and unambiguously invoke the right to counsel at this stage of the interrogation in a manner that a reasonable officer in light of the circumstances would have understood.

Mr. Lopez-Ayola next contends that Officer Chavez had an obligation to discern whether Mr. Lopez-Ayola invoked his right to counsel after Officer Chavez thought he heard Mr. Lopez-Ayola say the word "lawyer." Mr. Lopez-Ayola contends that this obligation arose because he had a hearing impediment. But Mr. Lopez-Ayola has cited no relevant authority to support this proposition. Rather, the Supreme Court has specifically balanced the need to protect Mr. Lopez-Ayola from the inherently coercive pressure involved in a custodial interrogation with the need for the police to conduct legitimate investigative activities. In so doing, the Court declined to "require law enforcement officers to cease questioning upon the making of an ambiguous or equivocal reference to an attorney . . . [because] when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of question would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity." *Davis*, 512 U.S. at 459–60 (citing *Michigan v. Mosley*, 423 U.S. 96, 102 (1975)). Thus, if Mr. Lopez-Ayola's invocation of counsel "fail[ed]

to meet the requisite level of clarity," officers were not required to stop questioning the suspect. *Id.* at 458.

In this case, Officer Chavez thought he might have heard Mr. Lopez-Ayola say the word "lawyer." Officer Chavez made an attempt to clarify regarding whether Mr. Lopez-Ayola invoked the right to counsel. Unfortunately, it appears that due to Mr. Lopez-Ayola's hearing impairment, he did not answer Officer Chavez's question and did not otherwise clearly invoke the right to counsel. Accordingly, the court finds that the officers were not required to stop questioning Mr. Lopez-Ayola under these circumstances.

## II.    Interview with Officer Leany

Mr. Lopez-Ayola further argues that he invoked his right to counsel while speaking with Officer Leany. As support for this position, Ms. Ericson testified that she heard Mr. Lopez-Ayola say the word "attorney" in Spanish. But Mr. Jimenez testified that the phrase relied upon by Ms. Ericson is unintelligible. Officer Leany also testified he did not hear Mr. Lopez-Ayola invoke the right to counsel.

Even if the court were to conclude (as Ms. Ericson testified) that Mr. Lopez-Ayola said the word "attorney" during the interrogation, without any further context, the court concludes that this is not a clear and unambiguous invocation of the right to counsel. In addition, Mr. Jimenez testified that, even using state of the art headphones and equalizers, he could not decipher Mr. Lopez-Ayola's alleged invocation of counsel. Moreover, despite Mr. Lopez's allegations, there is no reason to doubt or dispute Officer Leany's testimony that he never heard Mr. Lopez-Ayola invoke the right to counsel. In fact, this dispute between Ms. Ericson, Mr. Jimenez, and Officer Leany regarding exactly what Mr. Lopez-Ayola said (even with the benefit

of studying the audio and video recording after the fact) only serves to demonstrate that Mr. Lopez-Ayola did not clearly and unambiguously invoke the right to counsel.

The court finds that Mr. Lopez-Ayola's unintelligible statement that might have contained the word "attorney" was not a clear and unambiguous invocation of the right to counsel.

### III. Waiver

Mr. Lopez-Ayola argues for the first time in his reply brief that Officer Leany's explanation of the right to counsel was confusing and misleading. Thus, Mr. Lopez-Ayola contends he was not properly informed of his right to counsel. Specifically, Mr. Lopez-Ayola argues that Officer Leany's "explanation to the legally unsophisticated Lopez-Ayola led him to believe that counsel was available and therefore Lopez-Ayola had to answer the questions." (Dkt. 344.)

Indeed, Officer Leany's short and impromptu explanation of the Miranda rights, if stripped of the surrounding context, might appear confusing. But this court has held that it is important to examine the "totality of the circumstances" to determine whether or not Mr. Lopez-Ayola understood the right to counsel. *See United States v. Al-Saimari*, No. 2:12-CR-772-RJS, 2013 WL 5563991, at *5 (D. Utah Oct. 8, 2013) (examining whether, "given the totality of the circumstances," defendant understood his Miranda warning). Here, Sergeant Ruiz placed the written waiver in Spanish before Mr. Lopez-Ayola. It appears that Mr. Lopez-Ayola read that waiver and Mr. Lopez-Ayola stated to Officer Leany that he understood the waiver. (Interview Tr. at 3-4.) Sergeant Ruiz then asked Officer Leany to read it aloud in Spanish for Mr. Lopez-Ayola to ensure Mr. Lopez-Ayola understood the waiver. (*Id.* at 4.) Officer Leany clearly read Mr. Lopez-Ayola the waiver, including an explanation of Mr. Lopez-Ayola's right to counsel. (*Id.* at 5 ("You have the right to have an attorney present while we have this inter—interrogation.

8

If you cannot afford—if you cannot afford an attorney, one will be provided for you before we ask you any question.").) Mr. Lopez-Ayola stated that he understood. (*Id.*)

Next, Officer Leany stated that "[i]n simpler words, if you want an attorney, we can—then if we don't have one, we don't ask you questions." (*Id.*) In this context, it is clear that Officer Leany was explaining only that if Mr. Lopez-Ayola wanted an attorney, the police officers could provide an attorney. And if the police officers did not have an attorney for Mr. Lopez-Ayola, the officers would not ask him any questions. If Mr. Lopez-Ayola was in any way confused by any alleged discrepancy between the official waiver language and the simpler explanation provided by Officer Leany, Mr. Lopez-Ayola gave no indication. Rather, Mr. Lopez-Ayola again confirmed to Officer Leany that he understood. (*Id.*)

Accordingly, the court finds that Mr. Lopez-Ayola was properly informed of his right to counsel, and he did not invoke that right.

## IV. Diligence

Having found that Mr. Lopez-Ayola did not clearly and unambiguously invoke his right to counsel, the court need not decide whether the officers failed to diligently honor that request. Nor must the court decide whether the knowledge that Mr. Lopez-Ayola invoked his right to counsel to one officer is imputed on all officers.

## CONCLUSION

For the reasons stated, the court DENIES Mr. Lopez-Ayola's motion to suppress statements he made during the custodial interrogation of Mr. Lopez-Ayola. (Dkt. 315.)

SO ORDERED dated this 27th day of May, 2014.

                                      BY THE COURT:

                                      _____
                                      ROBERT J. SHELBY
                                      United States District Judge